UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

K.W., a parent and guardian
and J.W., a minor,

      Plaintiffs,

v.                     Case No: 2:14-cv-258-FtM-29CM

THE LEE COUNTY SCHOOL BOARD,
KIRK SWOPE, in his
individual capacity, SUE
PATTI, in her individual
capacity, and DIANNE PIERCY,
in her individual capacity,

      Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on review of defendants'
Motion to Dismiss Plaintiff's First Amended Complaint (Doc. #24)
filed on July 25, 2014. Plaintiff filed a Memorandum of Law in
Opposition to the Defendants' Motion to Dismiss the First Amended
Complaint (Doc. #27) on August 15, 2014. For the reason set forth
below, the motion is granted.

## I.

On May 13, 2014, plaintiff K.W., as parent and guardian of
J.W., a minor, initiated this action by filing an eight-count
against the Lee County School Board, Kirk Swope, Sue Patti, and
Dianne Piercy. (Doc. #1.) Plaintiff is now relying on her First
Amended Complaint (Doc. #20), which alleges as follows:

In 2012, J.W., an eight year-old female, attended the second grade at Allen Park Elementary School (Allen Park) in Fort Myers, Florida.  (Doc. #20, ¶ 12.)  J.W. suffers from permanent medical disabilities and has ongoing pulmonary and respiratory problems. (Id. ¶ 13.)  J.W.'s medical condition requires ongoing treatment, including the use of prescription medications and a breathing machine.   The medications cause significant weight gain and pulmonary and respiratory sensitivities.   At the time of the alleged incident, J.W. weighed 172 pounds and suffered from lung disease and emphysema.  (Id. ¶ 14.)

On May 11, 2012, J.W. sustained an injury to her left foot while walking from her lunch period to her instructional period. (Id. ¶ 17.)  J.W. informed her teacher, Kirk Swope (Swope), that she was in a lot of pain and was unable to walk without significant trauma.  (Id. ¶ 18.)  Swope, however, did not contact the school nurse or provide any assistance and when another student attempted to assist J.W., he verbally mocked her.  (Id. ¶¶ 18-19.)  J.W. continued to complain of her pain, but Swope continued to mock her by telling her that he was trying to call the school clinic even though no such attempt was made.  (Id. ¶ 21.)  Swope then sent J.W. to her physical education class.  (Id. ¶ 22.)

When J.W. arrived at her physical education class, she informed Dianne Piercy (Piercy) that she was in significant pain and could not put any weight on her foot.  Piercy did not inspect

2

J.W.'s foot or send her to the school nurse and demanded that J.W. participate in class. (Id. ¶ 23.) J.W. refused to participate and was subsequently written up for having a behavioral problem. Piercy then sent J.W. across the building, without assistance, to see Sue Patti (Patti), the counselor at Allen Park. (Id.) J.W. told Patti about her injury and stated that she was in excruciating pain. Patti did nothing to assist J.W. and did not contact the school nurse or J.W.'s mother. J.W. received a disciplinary note from Patti and was sent back to class without any assistance. (Id. ¶ 24.)

By the time the school day ended, the pain in J.W.'s foot was so severe that she collapsed as she walking to the parent pick-up line. After she collapsed, some of the other children pointed at her and said "look at the fat girl on the ground." (Id. ¶ 26.) When K.W. arrived to pick J.W. up from school, she was told that there were no more children for pick-up. K.W. frantically rushed to the front of the school and was told that J.W. had collapsed in the hallway. (Id. ¶¶ 28-29.) After J.W. told her mother about the excruciating pain in her foot, K.W. attempted to take off J.W.'s shoe, but struggled because J.W.'s foot was swollen to almost twice its normal size. (Id. ¶ 30.) K.W. immediately rushed J.W. to the emergency room where she was diagnosed with a fracture on the fifth metatarsal bone of her left foot. (Id. ¶¶ 31-32.)

J.W. returned to school on May 14, 2012, in a cast and on crutches, with a physician's note indicating that she was not supposed to participate in physical education because doing so could exacerbate her injuries. (Id. ¶ 34.)  The staff at Allen Park told J.W. that she could not use crutches without a doctor's note.  K.W. presented the release sheet from the emergency room, which indicated that the hospital provided the crutches. (Id. ¶ 35.)  Allen Park refused to accept the emergency room release and forced K.W. to return to the hospital in order to secure a doctor's note authorizing J.W.'s use of crutches. (Id.)

Despite the instruction to limit J.W.'s physical activity and the presence of a cast, Swope and other employees at Allen Park forced J.W. to attend physical education class on May 16, 2012. Piercy even wrote J.W. up in a disciplinary note for not participating in physical education. (Id. ¶ 36.)  Shortly thereafter, K.W. contacted the assistant principal at Allen Park as well as other members of the Lee County School Board to complain of the outrageous treatment of J.W. by the employees at Allen Park. Despite her complaints, neither the school officials nor the School Board investigated the incident or took any disciplinary action. (Id. ¶ 37.)

J.W. spent most of the summer recovering from her injury and when she returned to Allen Park in August 2012, the school officials continued to harass her.  She was severely disciplined

for non-violent and non-destructive behavior that was typical of a child her age and school officials frequently contacted K.W. during work hours to complain of the behavior.  (Id. ¶¶ 38-40.)

As a result of the incidents at Allen Park, plaintiff initiated this action against defendants.  Plaintiff's First Amended Complaint sets forth six counts based on federal law (Counts I - VI) and two counts based on Florida law (Counts VII & VIII).  Counts I through III assert the following official policy and custom claims against the School Board under 42 U.S.C. § 1983: (I) failure to train, (II) deliberate indifference, and (III) failure to investigate and discipline misconduct.  Plaintiff also asserts three § 1983 against the individual defendants: (IV) deliberate indifference against Swope, Patti, and Piercy, (V) equal protection (class-of-one) against Swope and Patti (Count V), and (VI) substantive due process against Swope, Patti, and Piercy. Finally, plaintiff asserts two state law claims: (VII) negligent supervision against the School Board and (VIII) intentional infliction of emotional distress against Swope (Count VIII).

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citation omitted).  To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 555.  <u>See also Edwards v. Prime Inc.</u>, 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," <u>Mamani v. Berzain</u>, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." <u>Chaparro v. Carnival Corp.</u>, 693 F.3d 1333, 1337 (11th Cir. 2012) internal quotation marks and citations omitted).  Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

**III.**

Section 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."   42 U.S.C. § 1983.   To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "(1) that the defendant deprived [the plaintiff] of a right secured under the Constitution or federal law and (2) that such deprivation occurred under color of state law." Arrington v. Cobb Cnty., 139 F.3d 865, 872 (11th Cir. 1998).   A local government may be held liable under § 1983 only "if the plaintiff shows that a 'custom' or 'policy' of the municipality was the 'moving force' behind the constitutional deprivation." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-94 (1978)).   The government entity "must be found to have *itself* caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory." Skop v. City of Atlanta, 485 F.3d 1130, 1145 (11th Cir. 2007) (emphasis in original) (citing Monell, 436 U.S. at 694-95).

Defendants assert that plaintiff's § 1983 claims against the School Board fail because "(1) Plaintiff is unable to show deliberate indifference, (2) she cannot establish a violation of the Equal Protection Clause, and (3) there was no violation of substantive due process."   (Doc. #24, p. 5.)   Because the policy

and custom claims fail in the absence of a constitutional violation, Rooney v. Watson, 101 F.3d 1378, 1381-82 (11th Cir. 1996), the Court will first address the challenges to the § 1983 claims asserted against the individual defendants.

A.   **Deliberate Indifference and Substantive Due Process**

In Count IV, plaintiff alleges that Swope, Patti, and Piercy were informed of J.W.'s serious medical injury when J.W. indicated that she was in excruciating pain and unable to walk. It is further alleged that Swope, Patti, and Piercy were deliberately indifferent to J.W.'s serious medical need because they intentionally refused to treat or seek treatment for J.W.'s fractured foot, they demanded that J.W. ambulate on her fractured foot despite her repeated protests of pain, and they mocked J.W. for complaining about her pain. (Doc. #20, ¶¶ 69-70.) Count VI relies on similar allegations, but adds that such behavior shocks the conscience. (Id. ¶¶ 78-79.) Defendants argue that dismissal of Count IV is warranted because deliberate indifference is insufficient to constitute a due process violation in a non-custodial setting. (Doc. #24, p. 6.) Defendants further argue that Count VI should be dismissed because the alleged actions of defendants do not shock the conscience. (Id.)

The Fourteenth Amendment prohibits States and their components from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §

1.   [T]he Due Process Clause was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (internal quotations and citations omitted). The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). Accordingly, the Fourteenth Amendment must not be used through § 1983 as a "font for tort law" to convert state tort claims into federal causes of action. Waddell v. Hemerson, 329 F.3d 1300, 1305 (11th Cir. 2003). "Nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989).

Only in certain limited circumstances does the Constitution impose affirmative duties of care on the state. Doe v. Braddy, 673 F.3d 1313, 1318 (11th Cir. 2012). As originally defined by the Supreme Court, those circumstances exist where (1) the state takes a person into custody, confining him against his will, and

(2) when the state creates the danger or renders a person more vulnerable to an existing danger. DeShaney, 489 U.S. at 198-201. The "state-created danger" exception has since been replaced by the standard employed by the Supreme Court in Collins, 503 U.S. at 128. Waddell, 329 F.3d at 1305. Now, the government's affirmative acts "rise to the level of a substantive due process violation [when] the act can be characterized as arbitrary or conscience shocking in a constitutional sense." Id. (citing Collins, 503 U.S. at 128).

**(1) Duty Created by a Custodial Relationship**

"A duty of protection can arise where the state has a custodial relationship with the individual, arising from such circumstances as incarceration in prison or involuntary commitment in a mental institution." Davis v. Carter, 555 F.3d 979, 982 n.2 (11th Cir. 2009) (citing DeShaney, 489 U.S. at 198-99). Mere compulsory attendance at a public school does not give rise to a constitutional duty of protection under the Due Process Clause because public schools generally lack the requisite control over children to impose such a duty of care upon these institutions. Id. (citing Wright v. Lovin, 32 F.3d 538, 540 (11th Cir. 1994)). See also Wyke v. Polk Cnty. Sch. Bd., 129 F.3d 560, 569 (11th Cir. 1997). Like the Eleventh Circuit, "each circuit to have addressed the issue has concluded that public schools do not have a special relationship with their students, as public schools do not place

10

the same restraints on students' liberty as do prisons and state mental health institutions." Doe ex rel Magee v. Covington Cnty. Sch. Dist. ex rel Keys, 675 F.3d 849, 858 (5th Cir. 2012) (citing cases).

The Eleventh Circuit has been "explicit in stating that 'deliberate indifference' is insufficient to constitute a due-process violation in a non-custodial setting." Davis, 555 F.3d at 983 (quoting Nix v. Franklin Cnty. Sch. Dist., 311 F.3d 1373, 1377 (11th Cir. 2002)). Here, plaintiff alleges that Swope, Patti, and Piercy were deliberately indifferent, but has not alleged that the circumstances surrounding J.W.'s attendance at Allen Park were different from that of any other child attending public school such that it would trigger the custody exception. Because plaintiff has failed to allege that J.W. had a custodial relationship with defendants, plaintiff's claim for deliberate indifference fails as a matter of law. Accordingly, Count IV of plaintiff's First Amended Complaint is dismissed without prejudice.

### (2)  Conduct that Shocks the Conscience

Under the second exception, a constitutional violation may be present if the conduct of the governmental actor "shocks the conscience." "To rise to the conscience-shocking level, conduct most likely must be 'intended to injure in some way unjustifiable by any government interest.'" Davis, 555 F.3d at 982 (quoting

Lewis, 523 U.S. at 849).  Conduct by a government actor that would amount to an intentional tort under state law would not, without more, rise to the level of the constitutional violation.  See Dacosta v. Nwachukwa, 304 F.3d 1045, 1048 (11th Cir. 2002). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." Waddell, 329 F.3d at 1305.

There are very few cases in the Eleventh Circuit in which the circumstances actually give rise to a constitutional violation. It is illustrative to review cases in the school setting where these principles have been applied.  In Neal v. Fulton County Board of Education, 229 F.3d 1069 (11th Cir. 2000), a high school coach intentionally struck a student with a metal weight lock, knocking the student's eye out of its socket, as a form of punishment for his involvement in a fight with another student.  Id. at 1071. The Eleventh Circuit concluded that the coach's conduct rose to the level of a constitutional violation because a school official "intentionally us[ed] an obviously excessive amount of force that presented a reasonably foreseeable risk of serious bodily injury." Id. at 1076.  In reaching its conclusion, the Eleventh Circuit made clear that the claims of excessive corporal punishment shaped the outcome.  Id.  Similarly, the Eleventh Circuit concluded in Kirkland v. Greene County Board of Education, 347 F.3d 903 (11th Cir. 2003), that a high school principal violated a student's constitutional rights after he struck the student with a metal

12

cane in the head, ribs, and back for disciplinary reasons.  <u>Id.</u> at 904-05.

By contrast, no conscience-shocking constitutional violations occurred in <u>Nix v. Franklin County School District</u>, 311 F.3d 1373 (11th Cir. 2002), or <u>Davis v. Carter</u>, 555 F.3d 979 (11th Cir. 2009).  In <u>Nix</u>, a high school teacher told his students to hold a live wire during a voltage-reading demonstration in his electromechanical class.  <u>Nix</u>, 311 F.3d at 1374.  The teacher warned his students that they might die if they accidently touched the exposed part of the wire.  <u>Id.</u>  The teacher increased the power to the wire, then turned away to answer a question.  <u>Id.</u>  When the teacher turned back to the students, he saw that one student had touched the wire and was gasping for breath.  <u>Id.</u>  After the student died, his parents brought a § 1983 suit and alleged that "the actions of the defendants 'were particularly arbitrary, reckless, and deliberately indifferent.'"  <u>Id.</u> at 1376.  The Eleventh Circuit, in concluding that the student's substantive due process rights were not violated, emphasized that mere negligence is insufficient to sustain a constitutional claim, while actions intended to injure and that are unrelated to any government interest are likely to rise to the conscience-shocking level.  <u>Id.</u> at 1375.  The court further noted that "[o]nly in the limited context of due-process claims based on excessive corporal

punishment has this court held that the intentional conduct of a high-school educator may shock the conscience." Id. at 1378.

In Davis, the plaintiffs bought a § 1983 action for violations of their son's substantive due process rights after the son died the morning after a voluntary workout session for the school football team. Davis, 555 F.3d at 981. The plaintiffs contended that their son was subjected to an intense and unreasonable practice that caused him to collapse and die the next morning. Specifically, plaintiffs alleged that the coaches failed to provide enough water to keep Davis hydrated, ignored signs and Davis's complaints that he was becoming dehydrated, subjected Davis to rigorous conditioning drills at the end of a two-hour practice, and failed to attend to Davis until after a team meeting, even though he had collapsed in the middle of the drills. Id. at 980-81. The plaintiffs further alleged that if a student did not perform all the exercises and activities in the workout, he would be subject to discipline from the coaches, such as additional drills, exclusion from tryouts, or demotion to the junior varsity team. Id. On these facts, the Eleventh Circuit found that the coaches did not violate the student's constitutional rights because they did not engage in corporal punishment, physically contact the student, or otherwise "act[] willfully or maliciously with an intent to injure" the student. Id. at 984. The court noted that "the coaches were deliberately indifferent to the safety

risks posed by their conduct," but found that in a school setting, "allegations of deliberate indifference, without more, do not rise to the conscience-shocking level required for constitutional violations." Id.

In this matter, plaintiff alleges that Swope, Patti, and Piercy knew of J.W.'s serious medical injury, but intentionally failed to provide immediate medical assistance. (Doc. #20, ¶ 78.) It is further alleged that defendants were deliberately insensitive to J.W.'s medical need because they intentionally refused to treat or seek treatment for J.W.'s fractured foot, demanded that J.W. ambulate on her fractured foot despite her repeated protests of pain, and mocked J.W. for complaining about her pain. (Doc. #20, ¶ 70.) The Court finds that these allegations do not rise to the conscience-shocking level.

Plaintiff does not allege that Swope, Patti, or Piercy made physical contact with J.W., intended to punish J.W., or acted with an intent to injure the minor child. Thus, defendants' actions were not the type of intentional and excessive corporal punishments inflicted by the school officials in Neal and Kirkland.

Moreover, the alleged conduct is no more egregious than the deliberate indifference shown by the coaches in Davis. The coaches in Davis saw that the student suffered from heat exhaustion and also saw the student collapse on the field. Despite their knowledge of the impending danger to the student, their failure to

provide or summon medical assistance was insufficient to state a viable cause of action under § 1983. Although J.W. was only eight years old at the time of the alleged incident and was threatened with disciplinary action, defendants' conduct does not shock the conscience. Accordingly, the Court finds that plaintiff has failed to allege a substantive due process violation and dismissal of Count VI is warranted.

## B.   Equal Protection

In Count V of the First Amended Complaint, plaintiff asserts a claim based on the "class of one" theory of equal protection against Swope and Patti. (Doc. #20, ¶¶ 72-76.) A class of one claim is implicated "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam); Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1201 (11th Cir. 2007). The Eleventh Circuit has enunciated an exacting standard for the pleading of class-of-one claims: the plaintiff must allege the existence of some similarly situated individual who was treated more favorably than the plaintiff herself. Griffin Indus., Inc., 496 F.3d at 1204-05. Moreover, the similarly situated requirement requires a plaintiff to demonstrate that she was treated differently than a similarly

situated comparator that is "prima facie identical in all relevant respects."  Id. at 1203.

Here, plaintiff alleges that Swope and Patti singled out J.W. "for disparate treatment different from the other minor children at Allen Park Elementary School." (Doc. #20, ¶ 74.)  There are, however, no allegations suggesting that the "other minor children at Allen Park Elementary School" were similarly situated in all relevant respects.  Plaintiff must do more than assert that other, unidentified students, were given better treatment.  See Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269, 1275 (11th Cir. 2008).  As such, the Court finds that plaintiff has failed to state an equal protection claim and Count V is dismissed without prejudice.

## C.   Policy and Custom Claims

In order "to impose § 1893 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  Because plaintiff has failed to plausibly allege a deprivation of J.W.'s constitutional rights, the custom and policy claims fail.  Counts I, II, and III will therefore be dismissed without prejudice.

## IV.

Plaintiff also asserts two claims arising under state law. As set forth above, each of plaintiff's claims arising under federal law is dismissed. Accordingly, there is no independent basis for jurisdiction over plaintiff's state law claims. Therefore, if plaintiff chooses not to amend her complaint (or the second amended complaint fails to adequately allege a claim arising under federal law), the Court will not retain jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

Accordingly, it is now

**ORDERED:**

Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. #24) is **GRANTED** and the First Amended Complaint is **dismissed without prejudice** to filing a Second Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this ___11th___ day of December, 2014.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:

Counsel of record